# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **WILLIAM THOMPSON,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:06CV00065 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **VIRGINIA DEPARTMENT OF** ) | By: James P. Jones |
| **GAME AND INLAND FISHERIES,** ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

*William Thompson, Marion, Virginia, Pro Se Plaintiff; David C. Grandis, Assistant Attorney General of Virginia, Richmond, Virginia, for Defendant.*

In this case arising under Title II of the Americans with Disabilities Act claiming that a state agency discriminated against the plaintiff by denying his request for an exemption from certain state hunting laws, I find that the defendant is entitled to summary judgment as a matter of law.

I

The plaintiff William Thompson filed the present pro se action seeking injunctive relief against the Virginia Department of Game and Inland Fisheries ("VDGIF") alleging a violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12132 (West 2005), which forbids disability discrimination

in the provision of public services.[1] Thompson suffers from degenerative joint disease of the right shoulder and neck that inhibits his mobility. (Pl.'s Mot. Summ. J. Ex. 6.) He claims that VDGIF failed to accommodate his disability by refusing to allow him to use a .223-caliber gun to hunt deer on state property and by not allowing him to take either-sex deer on days other than those officially designated as either-sex hunting days.[2]

This present action stems from a letter that Thompson sent to VDGIF on or about April 6, 2006, requesting that disabled persons be allowed to use a .223-caliber gun to dispatch deer. Thompson states that he needs to use a .223-caliber gun, since the recoil of a higher caliber gun would aggravate his degenerative joint disease.

---

[1] The plaintiff claims that his action also arises under the Virginia state constitution. Theoretically, the plaintiff could also assert that the defendant's conduct violated § 504 of the Rehabilitation Act, which prohibits disability discrimination in federally funded programs or activities. 29 U.S.C.A § 794 (West 1999 & Supp. 2006). Neither party discusses the applicability of the Rehabilitation Act, but as stated hereafter, I find it unnecessary to consider such a claim.

[2] This is not the first suit the plaintiff has brought against VDGIF alleging that the department, certain of its officers or employees, as well as other state officers had violated the ADA and had conspired to thwart his civil rights. The previous cases were dismissed and affirmed on appeal. *See Thompson v. Va. Dep't of Game & Inland Fisheries*, No. 1:05CV00102 (W.D. Va. Nov. 14, 2005), *aff'd*, 172 F. App'x 528 (4th Cir. 2006); *Thompson v. Va. Dep't of Game & Inland Fisheries*, No. 1:05CV00109, 2006 WL 1310363 (W.D. Va. May 14, 2006), *aff'd*, No. 06-1634, 2006 WL 2492785 (4th Cir. Aug. 29, 2006).

(*id.*)³

In a letter dated April 18, 2006, VDGIF denied Thompson's request and informed him that section 29.1-519(c) of the Virginia Code requires that "pistols and rifles used to hunt game birds and animals shall use no cartridge with a bullet of less than .23 caliber." (Def.'s Mot. Summ. J. Ex. B.) This letter also stated that, "[t]he Department of Game and Inland Fisheries can not [*sic*] make any exceptions to the law as provided." (*Id.*)

Thompson sent a second letter to VDGIF on or about April 7, 2006, regarding regulations that allow hunters fifteen years of age or younger to take one either-sex deer per license year on days other than those designated as either-sex deer hunting days. Thompson requested that VDGIF extend this youth privilege to physically challenged hunters with disabled licences or permits to hunt from a vehicle. (Def.'s Mot. Summ. J. Ex. C.) In support of this request, Thompson argued that an expansion of the youth privilege to disabled hunters, "might get more hunters involved," and benefit VDGIF since it could help with "problems of overpopulation" of deer. (*Id.*)

---

³ The plaintiff's degenerative joint disease was at issue in one of his previous cases against VDGIF. *See Thompson v. Va. Dep't of Game & Inland Fisheries*, No. 1:05CV00109, 2006 WL 1310363, at *1. In that case, the plaintiff claimed that because of his degenerative joint disorder and asthma, he needed to use a motorized wheelchair at times, and that VDGIF's failure to issue a permit allowing him to hunt from a vehicle discriminated against him on the basis of his disability. I did not reach the merits of the claim because I found that his complaint was untimely. *Id.* at *4.

VDGIF denied Thompson's request by a letter dated April 12, 2006. In this letter, VDGIF stated that since the passage of the youth hunters either-sex deer regulation, numerous other groups had also asked to be included, but that all such requests had been denied out of a concern that allowing numerous hunters to take either-sex deer on additional days, "could result in over-harvest in substantial areas of the state . . . [and] compromise the effective enforcement of [the Commonwealth's] wildlife protection laws." (Def.'s Mot. Summ. J. Ex. D.)

VDGIF contends that it is entitled to summary judgment since there exists no material dispute of fact, and it is entitled to judgment as a matter of law.[4] Both parties

---

[4] The defendant also contends that it is entitled to summary judgment because the Eleventh Amendment bars the plaintiff from bringing a suit seeking injunctive relief against a state agency. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("This jurisdictional bar [the Eleventh Amendment] applies regardless of the nature of the relief sought.") In response, the plaintiff states that Title II of the ADA allows the disabled to sue states for injunctive relief and other equitable relief. (Pl.'s Mot. Opp. Summ. J. 6.) In other words, the plaintiff suggests that Congress validly abrogated states' sovereign immunity when it created Title II of the ADA and hence, VDGIF is not protected from suit for claims arising under this act.

I need not address this dispute, however, since even if the Eleventh Amendment bars the plaintiff's suit against VDGIF, the Eleventh Amendment does not bar suits for equitable relief against state officers in their official capacity. *Ex parte Young*, 209 U.S. 123, 159-160 (1908). The plaintiff's suit could continue, therefore, if he were to amend his complaint and name in place of VDGIF, the applicable VDGIF official. Since the plaintiff is proceeding pro se, I would be inclined to allow such an amendment. In short, I must decide this motion for summary judgment on the merits.

- 4 -

have had an opportunity to respond to the motions, and they are now ripe for judgment.[5]

II

Summary judgement is appropriate when there is "no genuine issue of material fact," given the parties' burden of proof at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56(c). Although the moving party must provide more than a conclusory statement that there are no genuine issues of material fact to support a motion for summary judgment, it "need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). Additionally, while all reasonable inferences are drawn in favor of the non-moving party, the non-moving party has the burden to show that there exists a genuine issue of material fact for trial, and conclusory or speculative allegations do not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

---

[5] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

Because disability is not a suspect classification for the purposes of the Fourteenth Amendment, state statutes or regulations that allegedly discriminate on the basis of disability are subject only to rational basis scrutiny. *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1267 (4th Cir. 1995)*; see also City of Cleburne, Tex. v. Cleburne Living Ctr. Inc.*, 473 U.S. 432, 442-47 (1985). A classification based on disability will be upheld, therefore, as long as the classification is rationally related to a legitimate state interest. *Doe*, 50 F.3d. at 1267. The Supreme Court described this standard in *Kimel v. Fla. Bd. of Regents*, as follows, "As we have explained, when conducting rational basis review we will not overturn such [government action] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational." 528 U.S. 62, 83-84 (2000) (internal quotations and citation omitted).

Title II of the ADA "imposes a greater burden on the States than does the Fourteenth Amendment" because it prevents states from excluding the disabled from public programs or discriminating against them "by reason of such disability." *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d. 474, 487-89 (4th Cir. 2005); *see also* 42 U.S.C.A. § 12132. Even so, Title II does not require states to "employ any and all means to make . . . services accessible to persons with disabilities,

and it does not require States to compromise their essential eligibility criteria for public programs. It requires only reasonable modifications that would not fundamentally alter the nature of the service provided." *Tennessee v. Lane*, 541 U.S. 509, 531-532 (2004) (internal quotations omitted). In short, state action that excludes the disabled from public programs does not necessarily violate Title II because "States remain free to limit participation in their programs or activities for other, lawful reasons." *Constantine*, 411 F.3d at 488.

The Fourth Circuit has held that to establish a claim under Title II, plaintiffs must show that their disabilities played a "motivating role" in their exclusion from public services, programs or activities. *See Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999).[6] This requirement is derived directly from the language of Title II which states, "no qualified person with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C.A. § 12132 (West 2005) (emphasis added).

---

[6] As the *Baird* decision discusses, the Rehabilitation Act's standard is actually stricter than that of the ADA. *Id.* at 469. Plaintiffs alleging a violation of the Rehabilitation Act must show that they were excluded from a benefit due to discrimination solely on the basis of the disability. *Id.* at 467 (citing to *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d at 1265). Hence, since I find the plaintiff has not alleged sufficient facts to meet the more lenient ADA standard, I need not discuss whether the plaintiff has a sufficient claim under the Rehabilitation Act.

State statutes or regulations that are facially neutral but that disproportionately burden the disabled are also actionable under the Fourteenth Amendment and Title II. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) ("Both disparate-treatment and disparate-impact claims are cognizable under the ADA."); *Crowder v. Kitagawa,* 81 F.3d 1480, 1483 (9th Cir. 1996) ("Congress intended to prohibit outright discrimination, as well as those forms of discrimination which deny disabled persons public services disproportionately due to their disability."); *Smith-Berch, Inc., v. Baltimore County,* 68 F. Supp. 2d 602, 621 (D. Md. 1999) ("Title II prohibits not only intentional discrimination against disabled individuals, but also any policies or practices that have a disparate impact on disabled individuals.") A plaintiff bringing a disparate impact claim must first show that the policy or practice that is facially neutral has a more harsh effect on the protected class. *See Connecticut v. Teal,* 457 U.S. 440, 446 (1982) (analyzing Title VII claim); *see also Pathways Psychosocial v. Town of Leonardtown*, *Md.,* 133 F. Supp. 2d 772, 788 (D. Md. 2001) (analyzing ADA claim). Then, the burden shifts to the defendant who must show that the discriminatory rules or practices are justified by legitimate state interests. *See Raytheon Co.,* 540 U.S. at 54 (analyzing a Title I disparate impact claim and reiterating that the defendant has the burden of showing that the alleged discriminatory practice is justified by business necessity).

- 8 -

Thompson claims that his rights were violated under the ADA and the Virginia state constitution when VDGIF denied his requests to use a .223-caliber gun and to take either-sex deer on days other than those designated by VDGIF as either-sex deer hunting days. But these conclusory and speculative allegations alone are insufficient to create a genuine issue of material fact. Even assuming the facts in the light most favorable to Thompson in considering VDGIF's motion, and construing the complaint liberally since Thompson is proceeding without a lawyer, I find that Thompson has failed to allege any facts that could show that his disability was a motivating factor in VDGIF's decisions.

The summary judgment record suggests that Thompson's disability was not considered at all by VDGIF in denying his requests. "[T]he denials were based on the law of the Commonwealth and the rules and regulations promulgated by the Board of Game and Inland Fisheries." (Def.'s Mot. Summ. J. 13.) VDGIF would have rejected Thompson's requests regardless of his disability, because the actions that he wishes to engage in are illegal in Virginia.

VDGIF applied section 29.1-519(c) of the Code of Virginia in denying Thompson's request to use a .223-caliber gun. This statute explicitly outlaws the use of guns of less than .23-caliber in dispatching deer. The Virginia Administrative Code also outlaws the use of a .223-caliber gun: "[i]t shall be unlawful to use a rifle of a

calibre less than 23 for the hunting or killing of bear and deer. 4 Va. Admin. Code § 15-270-10 (1987).

VDGIF's denial of Thompson's request to take either-sex deer at any time was based on an agency regulation that forbids hunters older than fifteen years of age from taking either-sex deer on days other than those designated as either-sex hunting days. 4 Va. Admin. Code § 15-90-90 (2006).[7]

VDGIF argues that section 29.1-519(c) and the agency regulations "serve to effectively manage the deer population in Virginia, reasonably promote the humane harvesting of wild game and ensure hunter safety." (Def.'s Mot. Summ. J. 13.) The caliber regulation is necessary because "the use of rifles of a caliber less than .23 to dispatch deer would result in an unacceptable number of crippled wounded and/or lost deer." (*Id*. at 14.) VDGIF also states that it has considered extending the youth hunter either-sex anytime privilege to other groups, but has concluded that an expansion of this privilege would "adversely affect the Department's management of the deer population in Virginia." (*Id*.)

---

[7] There is a narrow exception to the general rule that antlerless deer can be taken only on designated either-sex hunting days, but it applies only to youth hunters: "Deer hunters 15 years of age and under . . . may take one antlerless deer per license year on days other than designated either-sex deer hunting days." (*Id*.)

In short, VDGIF has shown that its actions were in furtherance of a legitimate state interest, the protection of Virginia's deer population. Under a rational basis test, VDGIF would prevail, because the burden is on Thompson to show that there is no rational basis for the disparate treatment. While a plaintiff's burden is less onerous under the ADA than the Fourteenth Amendment, Thompson must still show that his disability played a motivating role in VDGIF's denial of his requests. *See Baird,* 192 F.3d at 470. Because Thompson has presented no evidence that suggests that his disability was considered by VDGIF, and to the contrary, VDGIF has shown that it rejected Thompson's requests for lawful reasons, VDGIF is entitled to judgment as a matter of law.

At best, Thompson's allegations suggest that section 29.1-519(c) and the agency regulations disproportionately burden persons with disabilities. But VDGIF would also be entitled to summary judgment on a disparate impact claim, since Thompson has not met his burden of showing that the discriminatory rules or practices are not justified by legitimate state interests. *See Raytheon*, 540 U.S. at 54. In short, because there is no genuine issue of material fact for trial as to a disparate treatment or disparate impact claim arising under Title II or the Virginia state constitution, VDGIF is entitled to summary judgment as a matter of law.

## IV

For the reasons stated, final judgment will be entered in favor of VDGIF. A separate judgment consistent with this Opinion is being entered herewith.

DATED: March 30, 2007

/s/ JAMES P. JONES
Chief United States District Judge